UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

HATTIE M. SIMS,

        Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

Case No. 3:10-CV-1040-HA

OPINION AND ORDER

HAGGERTY, District Judge:

    Plaintiff Hattie Sims seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying her application for Supplemental Security Income (SSI). This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). After reviewing the record, this court concludes that the Commissioner's decision must be AFFIRMED.

**STANDARDS**

    To establish eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable

OPINION AND ORDER- 1

physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for SSI. 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at steps one through four to establish his or her disability.

At the fifth step, however, the burden shifts to the Commissioner to show that jobs exist in a significant number in the national economy that the claimant can perform given his or her residual functional capacity (RFC), age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits. 20 C.F.R. §§ 404.1520(f)(1), 416.920(a). If the Commissioner meets this burden, the claimant is deemed to be not disabled for purposes of determining benefits eligibility. *Id.*

The Commissioner's decision must be affirmed if it is based on the proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted).

When reviewing the decision, the court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098. The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances where the evidence supports either

OPINION AND ORDER- 2

outcome. *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998). If, however, the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision, the decision must be set aside. *Id.* at 720.

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiff alleges that she is disabled due to several physical impairments, including: degenerative disc disease, obesity, asthma, hepatitis, and diabetes. Plaintiff was fifty years old when she filed her application for SSI on October 28, 2004. She is now fifty-eight years old. Her application for SSI was denied initially and upon reconsideration.

An Administrative Law Judge (ALJ) conducted a hearing on December 5, 2007. The ALJ heard testimony from plaintiff, who was represented by counsel, and an independent vocational expert (VE). Following the hearing, the ALJ issued a decision finding that plaintiff was not disabled as defined in the Social Security Act.

The ALJ found that plaintiff suffered from the following severe impairments: obesity, asthma, degenerative disc disease in her lumbar spine, Hepatitis C, and diabetes mellitus. Tr. 18, Finding 3.[1]  However, the ALJ also determined that plaintiff has the RFC to perform light work. Tr. 19, Finding 4. The ALJ noted that plaintiff should briefly stretch every hour; should avoid using ropes, ladders, or scaffolds; and should avoid concentrated exposure to dusts, fumes, and gases. *Id.* Plaintiff should only occasionally crouch, crawl, and climb. *Id.*

Based on plaintiff's RFC and testimony from the VE, the ALJ found that plaintiff was unable to perform her past relevant work as a housekeeper and janitor, but could perform jobs existing in significant numbers in the national economy. Tr. 22, Finding 5; Tr. 23, Finding 9.

---

[1] Tr. refers to the Transcript of the Administrative Record.

OPINION AND ORDER- 3

Specifically, the ALJ determined that plaintiff could perform the requirements of a photocopy machine operator, laundry folder, and small products assembler. Tr. 23.

The Appeals Council declined plaintiff's request for administrative review, making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently initiated this action seeking judicial review.

**DISCUSSION**

Plaintiff contends that this court must reverse and remand the Commissioner's final decision for an immediate award of benefits based on several alleged errors in the ALJ's decision. Plaintiff contends that the ALJ erred by (1) not specifying which aspects of plaintiff's testimony were not credible, (2) disregarding all side affects from plaintiff's methadone treatment, (3) rejecting plaintiff's treating doctor's opinion, and (4) rejecting the testimony of plaintiff's son. Although this court agrees that the ALJ committed some errors in his analysis, these errors are harmless and do not undermine the ALJ's ultimate conclusion that plaintiff is not disabled.

1. **Credibility determination**

The ALJ found that plaintiff's impairments "could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 20. Plaintiff contends that the ALJ erred in his evaluation of plaintiff's credibility because he "never identified any particular testimony specifically or said what evidence undermined that particular testimony." Pl.'s Br. at 3-4. Plaintiff contends that the ALJ's use of the phrase "intensity, persistence and limiting effects" is mere boilerplate and insufficient to meet the ALJ's burden. This court disagrees.

OPINION AND ORDER- 4

A claimant bears the initial burden of producing objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptom. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted). Once the claimant meets this threshold, and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.*; *see also* Social Security Ruling 96-7p ("[The ALJ's decision] must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight."). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Plaintiff's sole argument regarding the ALJ's credibility determination is that the ALJ did not identify which aspects of plaintiff's testimony were incredible. Plaintiff specifically takes issue with the ALJ's use of the phrase "intensity, persistence and limiting effects." This phrase is taken straight from the Commissioner's regulations. *See* 20 C.F.R. § 416.929(c)(4) (stating that the Commissioner will consider the claimant's statements about the "intensity, persistence, and limiting effects of [the claimant's] symptoms"). As such, it is often used in social security decisions to describe aspects of the claimant's testimony. However, the ALJ's use of this description does not require reversal of the ALJ's decision. *See, e.g.*, *Berry*, 622 F.3d at 1234-35 (affirming the ALJ's finding that the claimant's "subjective complaints about the intensity, persistence and limiting effects of his symptoms [were] 'not entirely credible'"); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (affirming the ALJ's adverse credibility

OPINION AND ORDER- 5

finding as to the "claimant's allegations as to the intensity, persistence and limiting effects of her symptoms"). Instead, the court must analyze whether the ALJ provided clear and convincing reasons for discrediting the claimant's testimony that are supported by substantial evidence in the record. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

An ALJ may reject a claimant's statement using ordinary techniques of credibility evaluation, including the claimant's reputation for lying, inadequately explained failures to seek treatment or to follow a prescribed course of treatment, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). A claimant's poor work history, inconsistent statements about the claimant's history of substance abuse, and contradictions between a claimant's complaints and his or her self-reported activities are clear and convincing reasons for rejecting a claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *Berry*, 622 F.3d at 1234-35.

In this case, the ALJ identified several reasons for disbelieving plaintiff's testimony: her poor work history, inaccurate testimony regarding her substance abuse, daily activities that are inconsistent with her description of her functioning, the conservative nature of her treatment, and her failure to comply with her prescribed treatment. Tr. 20-21. Plaintiff frequently gave inconsistent reports to her treatment providers about her substance abuse, missed appointments, failed to take her medications, and failed to bring her diabetes meter or medications to her appointments as requested. *See, e.g.*, Tr. 144-45, 302, 374, 442, 424, 427-28, 447, 517, 570, 601, 611, 667, 670, 673, 678, 684, 687-89. Plaintiff worked for only a short period, and last worked in 1989. Tr. 61-62, 146. Her diagnostic test results have been normal. Tr. 473, 692, 689, 703.

OPINION AND ORDER- 6

After reviewing the record, the court finds that the ALJ's reasons for rejecting plaintiff's testimony as to the severity of her symptoms are specific, clear and convincing, and supported by substantial evidence. The court rejects plaintiff's first assignment of error.

### 2. Impacts from plaintiff's methadone treatment

Plaintiff contends that the ALJ erred by "disregarding all side effects of plaintiff's methadone treatment . . ." Pl.'s Br. at 4. When analyzing a claimant's impairments, the regulations require an ALJ to consider "[t]he type, dosage, effectiveness, and side effects of any medication" the claimant has taken to alleviate his or her pain. 20 C.F.R. § 404.1529(c)(3)(iv). In this case, the ALJ rejected plaintiff's statements about fatigue, cognitive deficits, or other adverse side effects from her methadone treatment on the grounds that methadone does not constitute a medication, and that plaintiff's voluntary participation in a methadone treatment program requires her to accept responsibility for any adverse impacts caused by the treatment. Tr. 21. Both of the ALJ's stated reasons for rejecting plaintiff's methadone treatment lack merit.

Although plaintiff had initially been prescribed methadone to treat her heroin addiction, she was also taking methadone to alleviate her back pain. Tr. 279, 654, 663, 671. Accordingly, plaintiff's methadone was a medication that should have been considered by the ALJ. The ALJ may not disregard any side effects resulting from plaintiff's methadone treatment simply because she has chosen to continue taking her medication. The ALJ therefore erred when he disregarded plaintiff's methadone treatment.

After reviewing the record, however, the ALJ's error appears to be harmless. An error is considered to be harmless if it is "inconsequential to the ultimate nondisability determination" and does not negate the validity of the ALJ's ultimate conclusion. *Carmickle v. Comm'r, Soc.*

OPINION AND ORDER- 7

*Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

Plaintiff has not identified—during her administrative hearing or in her briefing to this court—any adverse side effects from her methadone treatment that she believes would change the ALJ's ultimate disability conclusion.  Moreover, upon review of the plaintiff's medical records, this court finds no adverse side effects.  Plaintiff did not report any side effects from her methadone treatment to any of her treating physicians or on her disability applications.  *See, e.g.*, Tr. 76, 87, 105, 128, 173, 178, 182, 193, 653-672.  Plaintiff's treating physicians did not assess any limitations due to her medications.  The only reference in the record to any side effects from plaintiff's methadone treatment is her statement on a pain questionnaire that the methadone "darkens my skin and affects my liver." Tr. 115.  Even if the court accepts plaintiff's statement as true, these side effects do not include any functional limitations that would negate the ALJ's non-disability determination.  Plaintiff's second assignment of error is rejected.

### 3. Medical opinion

Plaintiff asserts that the ALJ improperly gave greater weight to the opinion of a State examining physician, Dr. Sharon Eder, than to the opinion of plaintiff's treating physician, Dr. Mark Thompson.

In 2005, Dr. Eder opined that plaintiff was limited to standing or walking six out of eight hours and sitting six out of eight hours based on plaintiff's obesity and lower back pain.  Tr. 230. Doctor Eder based her opinion on the objective evidence and plaintiff's statement that she could be active two to three hours per day, was independent in her daily grooming, and was able to complete many household chores.  Tr. 234-36; Tr. 155 (noting plaintiff's activities).  Two years

later, in a disability letter to plaintiff's counsel, Dr. Thompson opined that plaintiff should do no more than sedentary work, and would likely miss more than two days of work per month due to her fatigue and reduced stamina. Tr. 651.

      The ALJ rejected Dr. Thompson's opinion[2] because his findings were not supported by objective evidence in the record, they contradicted his treatment notes, and were inconsistent with plaintiff's daily activities. Tr. 22. The ALJ also noted that Dr. Thompson had been treating plaintiff for less than twelve months, and may have been unfamiliar with her treatment record. *Id.* Plaintiff asserts that these reasons were insufficient to reject his opinion, and asks this court to credit Dr. Thompson's opinion as true and remand for an immediate award of benefits.

      Because Dr. Thompson's opinion is contradicted by the opinion of Dr. Eder, the ALJ may reject Dr. Thompson's opinion only by stating specific and legitimate reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may properly reject a treating physician's opinion in cases in which objective test results, reports from other physicians, testimony from the claimant, or other evidence conflicts with the physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir. 1989); *see also Burkhart v. Bowen*, 856 F.2d 1335, 1339-40 (9th Cir. 1988) (holding that an ALJ may reject a treating physician's opinion that is unsupported by medical findings, personal observations, or objective testing). An ALJ need not accept the opinion of a treating doctor that is brief, conclusory, and inadequately supported by clinical findings. *Bayliss*, 427 F.3d at 1216.

---

[2] In his decision letter, the ALJ occasionally referred to Dr. Thompson as Dr. Campbell. Tr. 22. This court assumes that this was an inadvertent error.

OPINION AND ORDER- 9

Doctor Thompson's opinion that plaintiff would miss work due to fatigue is not supported by the medical evidence or his own treatment records. Although plaintiff's liver tests revealed some abnormal levels, the ALJ observed that plaintiff was not diagnosed with liver disease and did not report any significant symptoms from her hepatitis. Tr. 262, 462-63, 464, 467, 489, 699, 753. Doctor Thompson never discussed fatigue or related symptoms associated with plaintiff's hepatitis in his treatment notes. Tr. 653-69. Plaintiff's prior primary care physician, Dr. Shikha Arun, also never mentioned any fatigue. Tr. 670-89. The only references to any symptoms of fatigue consist of plaintiff's subjective complaint of "some fatigue" during liver enzyme testing and her fatigue questionnaire that was completed in 2005. Tr. 110-12, 462-63. The ALJ was permitted to reject Dr. Thompson's opinion to the extent that it was premised on plaintiff's subjective complaints that had been properly discredited. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted).

The ALJ also permissibly rejected Dr. Thompson's opinion that plaintiff was limited to sedentary work. Doctor Thompson noted that physical examinations of plaintiff were normal, and that she reported no new symptoms. Tr. 653-69. X-rays and other diagnostic tests of plaintiff's back revealed either normal results or only mild degeneration. Tr. 260, 342, 665, 704. Plaintiff was directed to seek physical therapy for her back and shoulder pain instead of additional pain medications, but she never followed through with the recommendation. Tr. 653-54; *see also* Tr. 671 (noting that plaintiff's pain was well controlled by methadone). This court concludes that the ALJ gave specific, legitimate, clear, and convincing reasons for rejecting Dr. Thompson's opinion that were supported by substantial evidence in the record.

OPINION AND ORDER- 10

4.	Lay testimony of plaintiff's son

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work, limitations, or symptoms. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citations omitted). Such testimony cannot be disregarded unless the ALJ provides specific reasons germane to each lay witness. *Id.* at 1115.

Here, the ALJ considered the statements of plaintiff's son, Phillip Sims, but only "with caution." Tr. 21. The ALJ explained that Mr. Sims's personal relationship with plaintiff limited his ability to give an objective opinion, that he lacked any expertise to offer an opinion, and that his statements conflicted with plaintiff's treatment history and daily activities. *Id.*

It is improper for an ALJ to reject a lay witness's testimony simply because he or she is related to the claimant and may be an interested party. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (noting that "[s]uch a broad rationale for rejection contradicts our insistence that, regardless of whether they are interested parties, 'friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her condition'"); *cf. Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (holding that a lay witness's "close relationship" with the claimant, her desire to help him, and inconsistencies between her statements and the claimant's treatment were germane reasons for rejecting her testimony). The ALJ therefore erred when he disregarded Mr. Sims's statement on this basis.

The ALJ similarly erred when he rejected Mr. Sims's opinion based on his lack of expertise. A lay person, who generally lacks medical or vocational expertise, is not disqualified from rendering an opinion as to the severity of the claimant's symptoms. *See* 20 C.F.R. § 404.1513(d)(4) (providing that evidence provided by lay witnesses may be used to show "the

OPINION AND ORDER- 11

severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work"); *Bruce*, 557 F.3d at 1116. However, the ALJ was permitted to disregard Mr. Sims's testimony to the extent that it was inconsistent with plaintiff's stated activities or her conservative treatment. *See Valentine*, 574 F.3d at 694; *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").

Even if this court accepted Mr. Sims's statement that plaintiff is limited in her ability to walk, stand, lift, squat, and kneel, *see* Tr. 165, those limitations are not inconsistent with plaintiff's RFC. The ALJ limited her to light work, with only occasional crouching, crawling, or climbing, and allowed plaintiff stretching breaks every hour. Tr. 19. Moreover, the jobs identified by the VE that plaintiff could perform do not require frequent walking, bending, kneeling, crouching, crawling, or climbing. *See* DOT 207.685-014 (requiring the worker to place a copy on the machine and press a button; may involve cleaning or repairing machine); DOT 302.685-010 (requiring the worker to tend to automatic washing and drying machines, use hand iron, sort clothing); DOT 706.684-022 (requiring the worker to perform repetitive tasks on an assembly line). Therefore, even though the ALJ gave two impermissible reasons for rejecting Mr. Sims's testimony, these errors are harmless.

Finally, the court declines plaintiff's invitation to award benefits on the grounds that plaintiff turned the age of fifty-five in January 2009. This event occurred after the ALJ issued his decision and is beyond the scope of this court's review. If plaintiff believes that she is now entitled to benefits, she should file a new application.

OPINION AND ORDER- 12

**CONCLUSION**

This court concludes that the Commissioner's findings were based upon correct legal standards and were supported by substantial evidence existing in the record. The Commissioner's decision denying SSI benefits to Hattie Sims is AFFIRMED.

IT IS SO ORDERED.

DATED this 2nd day of February, 2012.

                                              /s/ Ancer L. Haggerty  
                                               Ancer L. Haggerty  
                                         United States District Judge